**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| BROWN, | ) | CASE NO. 1:11-cv-670 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | NANCY A. VECCHIARELLI |
| | ) | |
| PNC BANK | ) | |
| *fka National City Bank*, | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendant. | ) | **ORDER** |

        This case is before the undersigned United States Magistrate Judge upon the

consent of the parties.  Before the Court is Defendant PNC Bank's ("Defendant") motion

for summary judgment.  (Doc. No. 42.)  Plaintiff Kara Brown ("Plaintiff") opposes.  (Doc.

No. 47.)  For the reasons set forth below, Defendant's motion for summary judgment is

GRANTED.

### I.    BACKGROUND

        The following material facts are not disputed unless otherwise indicated.

Plaintiff is an African-American female.  She obtained an undergraduate degree in

music performance in 1999; and she graduated from law school and obtained a *Juris*

*Doctorate* in 2006.  (Kara Brown Dep. 27:1-28:1, Nov. 11, 2011, Doc. No. 42-2.)  She

took the Ohio Bar Examination, passed on her fourth attempt, and was sworn into the Bar for the state of Ohio in 2010.  (Brown Dep. 30:6-13, 31:19-21.)

In July 2006, after graduating from law school, Plaintiff was hired by and began working for National City Bank ("National City") in the position of a Fiduciary Administrator on the Support Team in the Private Client Services ("PCS") department of the Private Client Group, and in the salary grade "E09."  (Brown Dep. 71:20-72:24, 102:15-16.)  Her work responsibilities included managing investment and trust accounts and responding to customer questions via a dedicated "1-800" telephone number. (Brown Dep. 105:5-6, 106:12-19, 358:7-10.)  Her starting salary was $52,000 a year. (Brown Dep. 72:17-18.)

Prior to being hired, Plaintiff had not practiced law, did not have fiduciary or investment experience, and had no working knowledge of fiduciary law, tax law, regulatory issues, or investment management.  (*See* Brown Dep. 62:5-10, 121:4-17, 125:7-127:20, 215:20-24, 355:24-356:7.)  During law school, however, she had taken an Estates and Trusts class and was a legal extern with a municipality; and she held a variety of part-time jobs including as a mediator of civil claims for a municipality and as a clerk for a law firm.  (Brown Dep. 29:2-3, 40:7-52:19.)  Defendant concedes that it hired Plaintiff into the Fiduciary Administrator position even though Plaintiff did not meet all of the criteria for that position as set forth in the job description.  (Def.'s Mem. Supp. Mot. Summ. J. 2.)

Plaintiff alleges that she reported to Ms. Debra Pevas ("Pevas"), Operations and PCS Support Team Manager, for administrative matters and to Mr. Daniel McGuire ("McGuire") for trust-related matters.  (Pl.'s Opp'n Summ. J. 9.)  Nevertheless, Plaintiff

2

alleges that Pevas was her direct supervisor and was responsible for her performance evaluations.  (Pl.'s Opp'n Summ. J. 3, 5-7.)

Some time during the fall of 2006, Plaintiff asked Pevas if she could receive the title and/or position of Fiduciary Officer,[1] and be elevated from salary grade E09 to salary grade E07,[2] because she wanted to be paid the same as others with whom she worked.  (Brown Dep. 278:23-279:24, 291:19-292:1.)  Although a higher salary grade did not guarantee a higher salary or more benefits, it provided the *opportunity* to receive a higher salary and more benefits.  (Brown Dep. 285:19-286:4, 362:3-5, 362:13-15.) Pevas allegedly told Plaintiff that the Human Resources department changed its policy; that new employees in Plaintiff's department were no longer eligible to be placed in the E07 salary grade; and that any current employees in Plaintiff's department that were in the E07 salary grade had been placed in that grade before Human Resources implemented its policy change.  (*See* Brown Decl. ¶ 5, Doc. No. 68; Brown Dep. 280:2-10.)  However, despite Plaintiff's position as a Fiduciary Administrator, Plaintiff was referred to as a "Fiduciary Officer."  (*See* Pl.'s Ex. A, Doc. No. 48 at 1; Pl.'s Ex. B, Doc. No. 48 at 2-5 & Doc. No. 49; Pl.'s Exs. F-1a, F-1b, F-2, & F-3, Doc. Nos. 70-73.)[3]

---

[1]  Plaintiff conceded at deposition that she did not seek to obtain a new position. (Brown Dep. 279:16-18.)  She later contradicted herself by stating that, in addition to requesting the Fiduciary Officer title, she also requested to obtain a Fiduciary Officer position.  (Brown Dep. 291:11-23.)

[2]  The E07 salary grade is a higher salary grade than the E09 salary grade.  (*See* Brown Dep. 280:17-24.)

[3]  Defendant sought to strike many of Plaintiff's exhibits, including exhibit B, because they were not authenticated.  (Doc. Nos. 76, 78.)  The Court granted in part and denied in part Defendant's motion to strike and required Plaintiff to authenticate the exhibits lest they be stricken.  (Doc. No. 81.)  Plaintiff

Employees who held the *position* of Fiduciary Officer in the PCS department were Ms. Susan Friedman ("Friedman"), Mr. Timothy Gibbons ("Gibbons"), and Mr. William Davis ("Davis").  (*See* Brown Dep. 78:7-12; Def.'s Mem. Supp. Summ. J. 7.)  Friedman is a Caucasian female, and Gibbons and Davis are Caucasian males.  (*See* Brown Dep. 244:24-245:2, 245:13-16, 288:24-25; Def.'s Mem. Supp. Summ. J. 7.)  All three had *Juris Doctorate* degrees and were licensed to practice law.  (Brown Dep. 250:3-12, 257:24-258:2.)  National City hired Friedman one year before Plaintiff.  (*See* Shoemaker Ex. 5, Doc. No. 43-2, at 28.)  Friedman had prior experience practicing law regarding trusts and estates.  (Shoemaker Ex. 5.)  National City hired Gibbons out of private practice, where he specialized in estate planning, trust and probate law, and was certified in Estate Planning.  (Shoemaker Ex. 3, Doc. No. 43-2, at 12-13.)  Gibbons also served as a Trust Officer for Key Bank, was a former Chief Magistrate for Lake County Probate Court, and was a college lecturer on probate law.  (Shoemaker Ex. 3.)  Davis also had practiced law, both in private practice and as general corporate counsel.  (Shoemaker Ex. 4, Doc. No. 43-2, at 20-21.)  Plaintiff alleges that Friedman reported, as she did, to Pevas for administrative matters and to McGuire for trust-related matters.  Gibbons and Davis were not on Plaintiff's Team and did not report to Pevas, but only to McGuire.  (Brown Dep. 150:1-2, 151:5-7, 266:24-267:3, 354:24-355:3.)

Over the course of the next few months, Plaintiff observed that Defendant continued to post job openings for Fiduciary Officer positions in the Private Client

---

thereafter filed a Notice of Compliance that included her affidavit that purports to authenticate the exhibits.  (Doc. No. 82.)  Defendant has not argued or shown that Plaintiff's exhibits are not what Plaintiff purports them to be.

4

Services department that were in the E07 salary grade, although those positions were

for the State Team rather than for the Support Team on which Plaintiff was a member.

(Brown Decl. ¶ 6; Brown Dep. 281:6-22, 353:14-16.)  Plaintiff again asked Pevas if she

could be elevated to the E07 salary grade, and Pevas allegedly told Plaintiff to speak

with McGuire.  (Brown Decl. ¶ 6; Brown Dep. 281:6-22 281:24.)  McGuire allegedly told

Plaintiff that "it must have been a mistake" and "not to worry about it."  (Brown Decl. ¶ 6;

Brown Dep. 282:1-5.)

On March 12, 2007, Plaintiff received her 2006 performance evaluation.

(Brown Dep. 131:10-23; Shoemaker Ex. 1, Doc. No. 43-2, at 2.)  Pevas rated Plaintiff's

performance as "Achieves Some Expectations."  (Brown Dep. 131:14-133:13;

Shoemaker Ex. 1.)  Plaintiff received a 1% "Merit" increase in her salary, a $3,500 "PCS

Bonus," and a $900 "Support Team Quarterly Bonus."  (Brown Dep. 135:2-3, 134:8-

136:17; Shoemaker Ex. 1.)

On March 10, 2008, Plaintiff received her performance evaluation for 2007.

(Brown Dep. 140:14-21; Shoemaker Ex. 1., Doc. No. 43-2, at 3.)  Pevas again rated

Plaintiff's performance as "Achieves Some Expectations."  (Brown Dep. 141:14-16;

Shoemaker Ex. 1.)  Plaintiff received a 2.38% "Merit" increase in her salary, a $4,000

"PCS Bonus," and a $3,150 "Support Team Quarterly Bonus."  (Brown Dep. 145:2-18;

Shoemaker Ex. 1.)

On December 31, 2008, PNC acquired National City.  (Doc. No. 5.)  PNC

thereafter engaged in corporate restructuring and proceeded to reduce its workforce to

eliminate duplicative operations.  (Brown Dep. 189:11-23; Ann Graf Decl. ¶ 4, Doc. No.

42-5; *see also* Shoemaker Ex. 2, Doc. No. 43-2, at 6.)  PNC's reduction-in-workforce

("RIF") procedure was as follows.  First, PNC determined its business needs.  (*See* Graf Decl. ¶ 4.)  Then, PNC determined whether there were multiple incumbent employees in positions that supported those needs in specific geographic locations.  (*See* Graf Decl. ¶ 4.)  If there were multiple incumbent employees in such positions, PNC assessed those employees based on critical competencies to determine who was most qualified to remain in the positions.  (*See* Graf Decl. ¶ 4.)  The critical competencies were determined by high-level managers, and the assessments were performed by the employees' direct managers.  (*See* Graf Decl. ¶ 4.)  To increase the objectivity of the assessments, the direct managers did not know the weight attached to each critical competency or the minimum score required for the employees to remain eligible for their positions.  (*See* Graf Decl. ¶ 4.)

PNC intended to eliminate two Fiduciary Officer positions, one Portfolio Manager position, and six Associate positions in two National City locations—Cleveland, Ohio, and Kalamazoo, Michigan.  (Shoemaker Ex. 2, Doc. No. 43-2, at 6-7.)  Ultimately, over one thousand National City employees were laid off as a consequence of PNC's acquisition and corporate restructuring, including approximately twenty-three people from the PCS department of the Private Client Group.  (Brown Dep. 227:21-24; Brown Dep. Ex. 26, Doc. No. 43-1, at 10-96.)

On February 12, 2009, Plaintiff received her performance evaluation for 2008.  (Brown Dep. 152:3-19; Shoemaker Ex. 1, Doc. No. 43-2, at 4.)  Pevas rated Plaintiff's performance at "Achieves Expectations."  (Brown Dep. 153:5-7; Shoemaker Ex. 1.)  Plaintiff received a 3% "Merit" increase in her salary and a $2,000 "Bonus."  (Brown

6

Dep. 154:25-155:6; Shoemaker Ex. 1.)  At that time, Plaintiff made a written request to be elevated to the E07 salary grade or, in the alternative, be made a Vice President. (Brown Dep. 283:8-20, 294:3-8.)  Pevas allegedly told Plaintiff that, because PNC was acquiring National City at that time, the company was "not doing that."  (Brown Dep. 294:16-20.)

On August 4, 2009, Plaintiff was notified that her position was being eliminated and that she was being terminated from employment, effective December 31, 2009, as a consequence of PNC's acquisition of National City.  (Brown Dep. 182:16-187:15, 198:6-9.)  Plaintiff further was informed that terminated employees might remain in their current departments, or they might be moved to other departments; and, in some cases, they might be released prior to their effective termination dates if there was insufficient work.  (Brown Dep. 197:21-199:10.)  Plaintiff was offered a severance package that included twelve weeks of severance payments and was contingent upon signing a release and waiver.  (Brown Dep. 210:23-211:6.)  Plaintiff declined to sign the release and waiver.  (Brown Dep. 216:12-14.)

Defendant alleges that Plaintiff was terminated because she was one of the two lowest-ranked employees performing fiduciary functions in the PCS department.  (*See* Graf Decl. ¶ 8.)  Gibbons also was laid off as a consequence of PNC's acquisition. (Brown Dep. 228:7-14, 241:8-10, 266:3-5; McGuire Decl. ¶ 5.)

In the fall of 2009, all of the former National City employees had their job titles, base pay structure, and salary ranges changed, or "mapped," to conform with PNC's organizational structure.  (Brown Dep. 159:18-164:4.)  Plaintiff was "mapped" to the PNC position of "Trust Administrator Representative II" and "Salary Grade 17."  (Brown

7

Dep. 159:18-162:25, 183:11-17.)

Some time between August and December 15, 2009, Plaintiff's attorney contacted Defendant's legal department regarding Plaintiff's concern that Defendant had discriminate against her based on race and/or sex in relation to matters including her alleged requests for promotions and equal pay.  (Brown Dep. 23-25; Pl.'s Ex. E, Doc. No. 52.)

Defendant did not require Plaintiff  to report to work from December 19, 2009, through December 30, 2009; however, Defendant paid Plaintiff for that time.  (Brown Dep. 181:11-25, 331:12-14.)

### B.   Procedural Background

On August 12, 2011, Plaintiff filed her amended complaint.  (Doc. No. 29.) Plaintiff alleges that Defendant violated the Equal Pay Act ("EPA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and Ohio Revised Code Section 4112.02 when it discriminated against her based on race and sex in relation to her employment with Defendant.

On January 23, 2012, Defendant filed its motion for summary judgment.  (Doc. No. 42.)  Defendant generally contends that it should be granted judgment as a matter of law on all of Plaintiff's claims because Plaintiff cannot demonstrate a *prima facie* case for any of her claims.  Defendant also contends that Plaintiff cannot demonstrate that Defendant's reasons for Plaintiff's pay and termination are pretextual; and that any claim Plaintiff has made regarding severance benefits is preempted by the Employee Retirement Income Security Act ("ERISA").

On February 22, 2012, Plaintiff filed her response in opposition.  (Doc. No. 47.) On March 5, 2012, Defendant filed its reply to Plaintiff's response.  (Doc. No. 77.)

## II.    LAW & ANALYSIS

### A.    Standard of Review

One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  The moving party can meet this burden in two ways:  by presenting sufficient evidence to indicate there is no genuine issue of material fact; or by arguing that the nonmoving party, after adequate time for discovery, fails to show sufficient evidence to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Celotex*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleadings, but must produce evidence that results in a conflict of material fact to be resolved by a jury.  *See Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).  The court is not required to search the entire record to establish that it is bereft of a genuine issue of material fact.  *Al-Qudhai'een v. Am. W. Airlines, Inc.*, 267 F. Supp. 2d 841, 845 (S.D. Ohio 2003) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989)).  The nonmoving party has an affirmative duty to direct the court's attention to specific evidence upon which it seeks to

9

rely. *Id.* (citing *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001)).

In reviewing summary judgment motions, a court must view the evidence in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Pachla v. Saunders Sys., Inc.*, 899 F.2d 496, 498 (6th Cir. 1990).  In addition, the Court does not weigh the evidence or make credibility determinations.  *Joostberns v. U. Parcel Servs., Inc.*, 166 F. App'x 783, 787 (6th Cir. 2006).  The determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to defeat a motion for summary judgment; there must be evidence on which the jury could reasonably find for the nonmoving party.  *Id.* Ultimately, the court should determine whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law.  *Anderson*, 477 U.S. at 251-52.

A party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity.  *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999).  The failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).

10

### B.    Plaintiff's Claim Under the Equal Pay Act

Generally, the EPA prohibits employers from paying employees at a rate less than that paid to employees of the opposite sex for performing equal work. *Beck-Wilson v. Principi*, 441 F.3d 353, 359 (6th Cir. 2006) (citing 29 U.S.C. § 206(d)(1)).  To establish a *prima facie* case of wage discrimination under the EPA, plaintiffs must show that their employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions. *Id.*  The jobs need not be identical to be considered "equal work"; rather, plaintiffs must show that the jobs are "substantially equal." *Id.* at 359, 362.  Whether a job is substantially equal is determined on a case-by-case basis and resolved by an overall comparison of the work, not its individual segments. *Id.* at 359.  The focus at the *prima facie* stage is on actual job requirements and duties rather than job classifications or titles. *Id.* at 362; *see also* 29 C.F.R. § 1620.13(e) ("Application of the equal pay standard is not dependent on job classifications or titles but depends rather on actual job requirements and performance.")

If a plaintiff establishes a *prima facie* EPA violation, the defendant bears the burden to prove that the wage differential is justified under one of the four affirmative defenses set forth under 29 U.S.C. § 206(d)(1):  (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex. *Id.* at 360.

Plaintiff alleges in her amended complaint that Defendant violated the EPA by

"failing to provide equal pay or the appropriate severance package" as compared to "comparable male employees" and required her to report to work until her separation date while permitting "all other laid off employees" to leave work before their separation dates and continuing to compensate them as if they were working  (Amend. Compl. ¶¶ 22, 23.)  In her response in opposition to summary judgment, Plaintiff clarifies that she seeks to compare herself to Friedman, Gibbons, and Davis.[4]  (Pl.'s Opp'n Summ. J. 16, 18.)

Defendant concedes that Plaintiff was paid slightly less than her alleged comparators.  (Def.'s Mem. Supp. Summ. J. 13.)  Defendant argues, however, that Plaintiff cannot demonstrate she performed work that was substantially equal to her comparators.  Defendant points to evidence that:  Plaintiff did not hold the same position as her comparators; her team, responsibilities, and manager were different from her comparators; the work performed by her team consisted of a higher volume of lower value and less complex accounts; her bonuses were calculated in a manner different from her comparitors' bonuses; and Plaintiff was permitted to leave before her separation date and continue to be paid until her separation date as if she were working.[5]  (*See* Def.'s Mem. Supp. Summ. J. 2, 6, 14-15.)

———————————

[4] Friedman is not a valid comparator under the EPA because she is the same sex as Plaintiff.  (*See* Brown Dep. 244:24-245:2, 245:13-16, 288:24-25; Def.'s Mem. Supp. Summ. J. 7.)  Further, Plaintiff conceded during deposition that she should not have been paid as much as Gibbons because Gibbons was a "team lead" and had more responsibilities than she had.  (Brown Dep. 356:8-16.)  Plaintiff maintains, however, that she should have been in the same salary grade as Gibbons.  (Brown Dep. 361:6-8.)

[5] Defendant also argues that any differences in pay among Plaintiff and her alleged comparators were based on the differences among each employee's

In response, Plaintiff notes that she was called a Fiduciary Officer.  Evidence of Plaintiff's job title is relevant; however, the primary inquiry is whether Plaintiff performed work that was substantially equal to Gibbons', Davis', and/or any other male employee's work.  Plaintiff has not responded to, refuted, or rebutted Defendant's arguments and evidence with competent, admissible evidence that she performed work substantially equal to Gibbons', Davis', or any other male employee's work.[6]  Accordingly,

---

professional experience as well as the differences in work.  (*See* Daniel McGuire Decl. ¶ 4, Doc. No. 46-6.)  However, each employee's professional experience is irrelevant to whether Plaintiff can demonstrate a *prima facie* claim under the EPA, as "[a] plaintiff establishes a prima facie . . . case by comparing the jobs held by the female and male employees, and by showing that those jobs are substantially equal, not by comparing the skills and qualifications of the individual employees holding those jobs."  *Beck-Wilson*, 441 F.3d at 362-63.

[6] Plaintiff relies on the Kader and Friedman affidavits, as well as her declaration, as evidence that she performed work substantially equal to Friedman's, Gibbons', and Davis' work.  But the Kader and Friedman affidavits have been stricken (Doc. No. 81), and Plaintiff's declaration says nothing about Plaintiff's work as compared to any other employee's work.

Plaintiff also argues that she, Friedman, and Davis were "mapped" to the same PNC position and salary grade after PNC acquired National City—to "Trust Administrator Representative II" and "Salary Grade 17"—and that this is evidence that she performed work substantially equal to that of her alleged comparators.  However, Plaintiff provides no competent, admissible evidence that *anyone* was mapped to the same PNC position and salary grade as she was.

Finally, Plaintiff cites her exhibits B and C in support of her contention that she performed work substantially equal to that of her alleged comparators.  Exhibit B consists of four organizational charts.  (*See* Doc. No. 49.)  Plaintiff contends that the charts show that she, Friedman, Gibbons, and Davis reported directly to McGuire.  This contention is not accurate, as the charts appear to show that Plaintiff and Friedman reported directly to Pevas, and Gibbons and Davis reported directly to McGuire; and Plaintiff has not explained otherwise.  Furthermore, sharing a supervisor does not establish that the work was comparable.  Exhibit C consists of two data charts regarding the number of

13

Defendant's motion for summary judgment regarding Plaintiff's EPA claim is granted.

**C.     Plaintiff's Discrimination and Retaliation Claims Under Title VII and Ohio Revised Code Section 4112.02**

Under Title VII, it is an unlawful employment practice for an employer to discharge any individual, or otherwise discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of the individual's race or sex.  *See* 42 U.S.C. § 2000e-2(a)(1).  Further, it is an unlawful employment practice for an employer to discriminate against an employee because the employee has opposed any practice made an unlawful employment practice or has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.  *See* 42 U.S.C. § 2000e-3(a).

Under Ohio law, it is an unlawful employment practice for an employer to discriminate against any person with respect to tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment, because of the person's race or sex.  *See* Ohio Rev. Code § 4112.02(A).  Also, it is an unlawful employment practice "[f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code."  Ohio Rev. Code § 4112.02(I).

---

"controllable closures," "proactive client contacts," and "sales leads" achieved by a list of people, including Plaintiff, in the PCS department.  (Doc. No. 50.) Plaintiff provides no explanation of the significance of exhibit C; and exhibit C, alone, does not inform the Court whether the people listed on the charts performed substantially equal work.

Plaintiff alleges in her amended complaint under both Title VII and Ohio Revised Code Section 4112.02(A) that Defendant discriminated against her based on her race and/or sex by compensating her less than other employees; refusing to promote her; terminating her from employment; and requiring her to report to work until her separation date while permitting "all other laid off employees" to leave work before their separation dates and continuing to compensate them as if they were working. Plaintiff also alleges that Defendant's adverse actions were in retaliation against her for requesting promotions and having her legal counsel communicate with Defendant about perceived discrimination.

Federal case law interpreting Title VII is generally applicable to cases involving alleged violations of Ohio Revised Code Chapter 4112. *Jackson v. Int'l Fiber Corp., 395 F. App'x 275, 280 (6th Cir. 2010)* (quoting *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n, 66 Ohio St. 2d 192, 421 N.E.2d 128, 131 (Ohio 1981)*).  Accordingly, the Court's analysis of Plaintiff's disparate treatment and retaliation claims under Ohio law will be incorporated into its analysis of those claims under Title VII.

To survive a motion for summary judgment based on a claim of discrimination under Title VII, a plaintiff must present either direct evidence of discrimination or circumstantial evidence from which a jury could infer discrimination.  *Ploscowe v. Kadant, 121 F. App'x 67, 71 (6th Cir. 2005)*.  Plaintiff has not provided direct evidence of discrimination.  Absent direct evidence of discrimination, a plaintiff's claim is properly analyzed using the burden-shifting framework set forth in *McDonnell Douglas v. Green,*

15

411 U.S. 792 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).  *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2010). Under this standard, a plaintiff must first establish a *prima facie* case of discrimination by a preponderance of the evidence.  *Id.*  To establish a *prima facie* case of employment discrimination, a plaintiff must demonstrate:  (1) she is a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment decision; and (4) she was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees.[7]  *White*, 533 F.3d at 391.

If the plaintiff successfully demonstrates a *prima facie* case of discrimination, the burden of production shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action.  *Id.*  If the defendant is able to accomplish this, the burden of production shifts back to the plaintiff to show that the defendant's proffered reason was not its true reason, but was merely a pretext for discrimination.  *Id.* at 391-92.  Although the burden of production shifts, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.  *Id.* at 392.

Defendant argues that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law on Plaintiff's Title VII and Ohio law discrimination and retaliation claims because the undisputed facts do not support the claims and

---

[7] This standard *prima facie* framework may be modified to accommodate different employment discrimination contexts.  *Murray v. Thisledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir. 1985) (citing *McDonnell Douglas*, 411 U.S. at 802 n.13).

Plaintiff has failed to adduce sufficient evidence to show there are genuine issues for trial.  Plaintiff presents no response in relation to her claims of wage discrimination[8] and retaliation.  When a plaintiff asserts a claim in a complaint but then fails to delineate that claim in her brief in opposition to summary judgment, that claim is deemed abandoned.[9]  *E.E.O.C. v. Home Depot U.S.A.*, No. 4:07-cv-143, 2009 WL 395835, at *17 (N.D. Ohio Feb. 17, 2009) (collecting cases).  For the following additional reasons, the Court agrees that Plaintiff has failed to meet her burden on summary judgment as to her failure-to-promote and discriminatory discharge claims.

### 1.    Plaintiff's Failure-to-Promote Claim

A plaintiff claiming discrimination based on a failure to promote must demonstrate that (1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time the plaintiff's request for the promotion was denied.

---

[8]  Plaintiff titled her argument regarding wage discrimination as follows: "Defendant substantially underpaid Plaintiff while she performed equal work of Caucasian male & female workers and therefore establishes a Prima Facie case under the Equal Pay Act and ORC 4112.02."  (Pl.'s Response Opp'n Summ. J. 16.)  Plaintiff's discussion, however, is in the legal context only of the EPA and does not even mention Title VII or Ohio law.

[9]  Even if the Court were to consider Plaintiff's wage discrimination claims under Title VII and Ohio law based on her arguments under the EPA, the claims remain incomplete, as under Title VII a plaintiff additionally "must demonstrate proof of discriminatory intent" and Plaintiff has failed to do so.  *See Home Depot U.S.A.*, 2009 WL 395835, at *17 (citing *Beck-Wilson*, 441 F.3d at 360).  Further, Plaintiff presents no legal argument or explanation regarding retaliation.  Absent any argument or citation to evidence in support of these claims, Plaintiff has failed to show that there are genuine issues of material fact and that she can establish the existence of essential elements of these claims.

*White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005).

Plaintiff alleges in her amended complaint that Defendant discriminated against her when it failed to promote her after she requested to be a Fiduciary Officer, to be placed in the E07 salary grade, and to receive the title of Vice President.[10]  (Amend. Compl. ¶ 15.)  There is no dispute that Plaintiff is a member of a protected class and that her requests were denied.  Defendant argues that Plaintiff cannot meet the second and fourth elements of a *prima facie* case because the undisputed material facts show that Plaintiff never applied for a promotion, but merely requested changes to her title, salary, and pay grade; and Plaintiff has produced no evidence that she was qualified for any promotion and was qualified similarly to others who were given those positions or the E07 salary grade.  For the following reasons, the Court agrees.

Plaintiff does not explain what legally constitutes a promotion.  Case law, however, suggests that a promotion entails a change in position that results in increased work responsibility and compensation.  *Cf. Allen v. Ohio Dep't of Job & Family Servs.*, 697 F. Supp. 2d 854, 855 (S.D. Ohio 2010) ("[T]he parties do not dispute that the successful . . . applicant would have received a significant pay increase and would have a higher level of responsibilities.  Accordingly, the Court concludes that Allen has sufficiently demonstrated this element of his *prima facie* case.").  Plaintiff fails

_____

[10]  Plaintiff also claims that Defendant discriminated against her when it did not compensate her equally and give her the same severance package as her peers after they all were elevated to the same PNC position in late 2009.  As an initial matter, Plaintiff has produced no competent, admissible evidence in support of her contention that she and her "peers" were placed in the same PNC position and salary grade.  Further, this contention is not a failure-to-promote claim, but a claim of unequal pay, and, therefore, is not a relevant issue here.

18

to produce evidence and show there are genuine issues regarding whether she applied for promotions and was qualified for such promotions.  Plaintiff offers no explanation or competent, admissible evidence of the differences in work responsibility and compensation among the Fiduciary Administrator, Fiduciary Officer, and Vice President titles or positions and the E07 salary grade; or how an applicant could qualify to obtain those titles, positions, or the E07 salary grade.  And she fails to cite any legal authority in support of her allegation that her requests constitute applications for promotions.

Plaintiff also fails to produce evidence and show there is a genuine issue regarding whether others who were not in a protected class and were qualified similarly to her obtained the alleged promotions that she requested.  Plaintiff has abandoned Friedman as a comparator under her failure-to-promote claim, as she does not mention Friedman in her argument;[11] and, although Plaintiff alleges that she was qualified similarly to Gibbons and Davis, she offers no competent, admissible evidence in support.[12]  Further, Plaintiff does not explain or offer competent, admissible evidence of when Gibbons and Davis were hired as Fiduciary Officers in the E07 salary grade and

---

[11] Even if Friedman were a valid comparator, Plaintiff could not demonstrate the fourth element of a *prima facie* case of her failure-to-promote claim regarding becoming a Fiduciary Officer and being placed in the E07 salary grade, as Friedman was hired as a Fiduciary Officer in the E07 salary grade approximately one year before Plaintiff was hired, not at the time Plaintiff's requests were denied.

[12] Plaintiff cites the Kader and Friedman affidavits, Plaintiff's declaration, and Plaintiff's exhibit J in support of her contention that she was qualified for the alleged promotions.  However, the Kader and Friedman affidavits have been stricken; Plaintiff's declaration does not support the conclusion that she and any others were similarly qualified; and exhibit J regards PNC's corporate restructuring plan and does not indicate how she and any others were similarly qualified (*see* Doc. No. 55).

whether they obtained the positions to which she allegedly applied; or of anyone qualified similarly to her who was not a member of her protected class and who received a Vice President position at the time Plaintiff request it and was denied.

While Defendant has pointed to sufficient evidence to indicate there are no genuine issues of material fact and has argued that Plaintiff cannot establish elements essential to her failure-to-promote claims under Title VII and Ohio law on which she bears the burden of proof at trial, Plaintiff has failed to respond with competent, admissible evidence that shows a conflict of material fact upon which a jury could reasonably find for her.  Accordingly, Defendant's motion for summary judgment regarding Plaintiff's failure-to-promote claims under Title VII and Ohio law is granted.

### 2.    Plaintiff's Claim of Discriminatory Termination

To establish a *prima facie* case of wrongful termination, a plaintiff must establish: (1) she is in a protected class; (2) she was terminated; (3) she was qualified for the job; and (4) that a similarly situated person who was not in the protected class received the job or was not terminated.  *See Mynatt v. Lockheel Martin Energy Sys., Inc.*, 271 F. App'x 470, 477 (6th Cir. 2008); *White*, 533 F.3d at 391.  It is undisputed that Plaintiff's termination occurred under the circumstances of a RIF related to PNC's acquisition of National City.  In a RIF case, the fourth element of the *prima facie* case is modified to require the plaintiff to submit "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Mynatt*, 271 F. App'x at 477.

Defendant argues that Plaintiff cannot demonstrate the fourth element of a

20

*prima facie* case because PNC also laid off Gibbons—a Caucasian, male Fiduciary

Officer.  Defendant further argues that, even if Plaintiff could demonstrate a *prima facie*

case, she cannot show that Defendant's reason for Plaintiff's termination—that Plaintiff

was one of the two lowest-ranking employees on the RIF evaluations of those

performing fiduciary functions in the PCS department—is pretext for illegal

discrimination.

> Plaintiff's argument in response is as follows:
>
> Plaintiff establishes a prima facie case as she an African American woman, terminated by Defendant. Plaintiff performed her job as Fiduciary Administrator with no management complaints, positive review remarks and earned a bonus every year, and had been mapped to a PNC Trust Administrator II, as her comparators.  Kara qualified for the position because she was assigned the position and performed those duties. Kara was impermissibly singled out for discharge, because Defendant was scheduled to release only Fiduciary Officers in the PCS department; and interestingly released Plaintiff, a Fiduciary Administrator not a Fiduciary Officer.

(Pl.'s Opp'n Summ. J. 20.)  Plaintiff's argument is cursory, unsupported, and utterly fails

to address:  (1) whether Plaintiff was similarly situated to someone who was not in her

protected class and who was treated differently than her in the RIF; and (2) how

Defendant's proffered reason for terminating her is pretext.  While Defendant has

pointed to sufficient evidence to indicate there are no genuine issues of material fact

and has argued that Plaintiff cannot establish elements essential to her discriminatory

discharge claims under Title VII and Ohio law on which she bears the burden of proof at

trial, Plaintiff has failed to respond with competent, admissible evidence that shows a

conflict of material fact upon which a jury could reasonably find for her.  Accordingly,

Defendant's motion for summary judgment regarding Plaintiff's discriminatory discharge

21

claims under Title VII and Ohio Revised Code Section 4112.02(A) is granted.[13]

### III.    CONCLUSION

The fundamental problem with Plaintiff's response (in addition to an incomplete and erroneous legal analysis) is that Plaintiff does not understand that a non-movant must come forward with admissible evidence to meet a well-supported motion for summary judgment.  She asserts that because she "disputes" Defendant's evidence and arguments, there is a genuine issue of material fact for a jury.  In fact, her claims rest almost entirely upon unsupported allegations and unsupported "conclusions" about the job positions at National City and PNC.  In the absence of admissible facts, her position is no more than a "belief" that is insufficient to overcome Defendant's summary judgment motion.

For all of the foregoing reasons, Defendant's motion for summary judgment is GRANTED.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date:  May 8, 2012

_____

[13] Defendant also argues that, to the extent Plaintiff claims she suffered discrimination in relation to her severance package, such claims are preempted by the Employment Retirement Income Security Act ("ERISA").  As Plaintiff has utterly failed to meet her burden on summary judgment as to her substantive claims of discrimination, the Court need not resolve whether Plaintiff's claims as they relate to her severance package are preempted.

22